# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 1:08CR5 LG-JMR** |
| | § | **CIVIL NO. 1:10CV512 LG** |
| **LUPE MARTINEZ** | § | |

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO VACATE, SET ASIDE OR
## CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

BEFORE THE COURT is the Motion of the Defendant Lupe Martinez to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to Title 28, United States Code, Section 2255. Martinez seeks to set aside his Judgment of Conviction and sentence for possessing with the intent to distribute, and conspiring to distribute, methamphetamine. The Court has considered the grounds presented and the record. For the reasons below, the Motion will be denied without an evidentiary hearing.

### FACTS AND PROCEDURAL HISTORY

Upon Lupe Martinez's arrest and initial appearance in February 2008, Federal Public Defender John Weber was appointed to represent him. Martinez pled not guilty, and the case proceeded toward trial. Before the scheduled trial date, a conflict arose between Martinez and Weber. Weber was allowed to withdraw, and Doyle Coats was appointed in his place. Trial was continued at Coats' request to allow him time to prepare.

At trial, the government put on five witnesses, and Martinez testified on his own behalf. The evidence included testimony from a female undercover agent, who

purchased methamphetamine from Martinez while wearing an audio recording device, a woman who accompanied Martinez on a trip to Texas to purchase drugs, and a former girlfriend who Martinez provided with methamphetamine during their multi-month relationship. The girlfriend also testified that she witnessed Martinez conduct two methamphetamine transactions, including a sale of one ounce to a woman named Michelle. Martinez testified that he had nothing to do with methamphetamine, did not conduct the drug transactions, and did not know either of the women who claimed to have traveled with or had a relationship with him.

At the conclusion of the trial, the jury found Martinez guilty on all four counts: three counts of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841, and one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846.

Sentencing began on October 10, 2008, and continued on October 27, 2008. The Court heard additional testimony from the woman who accompanied Martinez to Texas. She stated that Martinez raped her at gunpoint during the trip. The Court also heard from the woman who was in a relationship with Martinez. She had testified during trial that Martinez gave her small quantities of methamphetamine - one to two grams - somewhere around 100 times during their relationship. Upon questioning from defense counsel at sentencing, she testified Martinez gave her that amount only once or twice. However, when the government cross-examined her on that point, she reverted back to her trial testimony, agreeing that she had received small amounts not "one or two times, it was a hundred times, or almost every other day, wasn't it?" Sent.

Tr. 21, Oct. 27, 2008, ECF No. 40. Martinez also testified.

The Court questioned the former girlfriend about her trial testimony regarding a telephone call she received from Martinez while he was in custody. She stated that Martinez wanted to know the whereabouts of the undercover agent witness so that "he could have something done so she wouldn't testify." *Id*. at 22. The Court also questioned the girlfriend about a statement in the pre-sentence report that she had witnessed Martinez sell methamphetamine to an individual. However, she did not recall any of the specifics of that incident. *Id*. at 23. Neither defense counsel nor the government requested any follow-up to the Court's questions.

The Court then ruled on Martinez's objections to the presentence investigation report. The first was a two-point victim-related adjustment under Section 2D1.1E of the Sentencing Guidelines wherein if a defendant commits or attempts to commit a sexual offense against another by distributing with or without that individual's knowledge a controlled substance to that individual, an adjustment as a vulnerable victim should apply. The Court found that guideline adjustment inapplicable, and sustained Martinez's objection.

Next, Martinez objected to a two-point adjustment for obstruction of justice related to the phone call(s) from Martinez to his former girlfriend attempting to find out where the government's undercover agent was so that he could prevent her from testifying against him at trial. The Court found the former girlfriend's testimony consistent and credible, and therefore overruled Martinez's objection to the adjustment.

Finally, Martinez objected to a two-level adjustment for the use of a firearm

during the offense. The Court overruled the objection, stating, "what is important is that a firearm was present and that it was present during a period of time in which Mr. Martinez had gone to Houston for the purchase of narcotics."

As for the amount of methamphetamine, the Court found 39.78 grams undisputed, as that was the amount sold to the undercover agent. However, the Court did not credit Martinez's former girlfriend's testimony that he had given her one or two grams a hundred times. Finding she was sure only of one or two occasions on which Martinez had given her methamphetamine, the Court determined that Martinez should be responsible for an additional two grams. The Court also did not credit her testimony regarding Martinez's sale of one ounce of methamphetamine to a woman named Michelle.

In total, Martinez was held responsible for the equivalent of 799.6 kilograms of marijuana, resulting in a base offense level of 30. With the addition of four adjustment points, the total offense level was 34 with a criminal history category of one. The sentencing guideline range was 151 to 188 months. Neither Martinez nor the government produced any additional evidence for the Court's consideration under Section 3553(a).

After hearing a short statement from Martinez, the Court sentenced him to 240 months imprisonment, and explained its variance from the guidelines:

> In the opinion of the Court, the facts and circumstances attended [sic] in this case cry out for a variance above the advisory guidelines. The conduct of the defendant over this period of time and the circumstances attendant in this case do not begin to be appropriately addressed by the provisions of the advisory guidelines. And in the opinion of the Court, the

guidelines are well understated.

Applying the statutory factors which the Court has considered, the Court notes specifically that in this particular case, the defendant was involved in a continuing criminal enterprise which spanned several states, including Mississippi, Texas and Alabama. It not only involved the defendant, but numerous other players, as well, over an extended period of time. The Court also notes that there are circumstances attendant in this case which call for a more severe sentence involving sexual offenses at gunpoint where witnesses were held against their will over a period of several days. The Court notes that the defendant provided drugs to at least one individual who was an addict and contributed to her addiction by providing drugs in exchange for a sexual relationship.

And perhaps more telling than any of these other factors is the fact that this defendant was caught and convicted of drug distribution and ultimately deported from the United States for that conduct. He illegally returned to the United States and engaged in the same conduct once again. Under those circumstances, the Court feels that applying each of the statutory factors which I have considered - and I will note them specifically in my statement of reasons.

They include the nature and circumstances of this offense and history and characteristics of this defendant, the seriousness of the offense and the need to promote respect for the law and to provide a just punishment for this offense, the need for adequate deterrence to deter others, as well as this defendant, from similar conduct, and the need to protect the public from this defendant in the further commission of drug and otherwise offenses, including drug offenses. The Court feels that a variance is cried out for, and that's the reason that I am going to employ one here.

. . .

I note something I may have omitted. I may have gone over it in the record, but I may have omitted it insofar as the statutory factors are concerned. I note again that this Court does not operate in a total and complete vacuum. Instead, it makes deductions, reaches conclusions, and can draw inferences from facts that have been established. The Court is well aware that some of the witnesses have been in protective custody and that there are other members of this enterprise still at large, and that there have been efforts not only on behalf of this defendant, but on

behalf of other co-conspirators, as well, to, at a minimum, influence the testimony of these witnesses. The Court has taken that into consideration in fashioning a sentencing in this case.

Sent. Tr. 32-33, 35, Oct. 27, 2008, ECF No. 40.

Martinez's appeal was denied by the Fifth Circuit Court of Appeals. *United States v. Martinez*, 339 Fed. App'x 404 (5th Cir. 2009).

## The Legal Standard

In considering a collateral challenge to a conviction and sentence under 28 U.S.C. § 2255, it is well settled that, absent countervailing equitable considerations, a district court will not adjudicate claims previously raised and rejected on direct review. *See Withrow v. Williams*, 507 U.S. 680 (1993). It is also well settled that a collateral challenge may not take the place of a direct appeal. *See United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991). If a movant challenging his conviction and sentence pursuant to 28 U.S.C. § 2255 could have raised his constitutional or jurisdictional issues on direct appeal, he may not raise them for the first time on collateral review unless he shows cause for his procedural default and actual prejudice resulting from the error or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. *See id.* at 232. To satisfy the "cause" standard, a movant must "show that some objective factor external to the defense prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). To satisfy the "prejudice" standard, a movant must show that the error he alleges "worked to his actual and substantive

disadvantage, infecting his entire trial with error." *United States v. Frady*, 456 U.S. 152, 170 (1982). The procedural bar does not apply, however, to claims which could not have been raised on direct appeal, such as those alleging ineffective assistance of counsel.

In this Motion, Martinez primarily contends that his attorneys provided ineffective assistance. To prevail on an ineffective assistance of counsel claim, the defendant must prove: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As more recently explained by the United States Supreme Court:

> To establish ineffectiveness, a defendant must show that counsel's representation fell below an objective standard of reasonableness. To establish prejudice he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Williams v. Taylor*, 529 U.S. 362, 390-01 (2000).

The Court is to be "highly deferential" in conducting this review. "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

## a) Threatening Phone Call From Prison

Martinez contends his counsel was ineffective for failing to investigate the circumstances of the cellular phone call Martinez allegedly made from prison to his former girlfriend, in which he tried to locate and, at the least, influence the testimony of another witness against him. Martinez claims his counsel was also ineffective for failing to question his former girlfriend about it while she was on the stand. Martinez argues that had counsel done so, the Court would have been informed that he could not have made a cellular phone call from prison, and therefore would not have applied a two-point enhancement, nor would the Court have considered the threats a factor in the upward variance.

During the sentencing hearing, defense counsel objected to the factual basis for this enhancement, (Sent. Tr. 10-11, Oct. 10, 2008, ECF No. 39), and also questioned Martinez about the phone call.

| | |
|---|---|
| Counsel: | Paragraph 28 was an adjustment for obstruction of justice. Did you have access to a telephone in that jail or a - - |
| Defendant: | (Interpreter) I never had any money in my account, so how can I buy a telephone? |
| Counsel: | Did you make any phone calls from that jail to [either of the two witnesses]? I don't remember which one. |
| Defendant: | (Interpreter) Why did the federal didn't check on that? That's their job. I have never spoken on the phone, not one time. No letter. I have no communications with anybody. |
| Counsel: | Did you make any threats to anyone relative to [your brother's neighbor]? |

Defendant:    (Interpreter) Nothing.  I have not threatened anyone.  I have not spoken with that woman, and I have not threatened anyone.

*Id.* at 52-53.

Thus, counsel ensured that the Court was informed of Martinez's position that he could not and did not make a threatening phone call from prison.  Martinez can show no error by counsel in this regard.  Furthermore, as the Court noted, there was additional information about other threats to these witnesses made by those associated with  Martinez, which was also considered.  *See id.* at 18.  Accordingly, Martinez can show no prejudice even if counsel had failed to bring this issue to the Court's attention.

### b) The Decision to Go To Trial

Martinez next alleges that both of his attorneys misinformed him about the evidence against him and his sentencing exposure.  He states that his decision to go to trial was based on the erroneous belief from both Mr. Weber and Mr. Coats, that the Government's case in chief would be completely undermined by an illegally altered video surveillance tape and the testimony of his brother and co-defendant, Valentine Martinez.  And furthermore, "[i]n [his] mind, regardless, if he lost, he was only facing 80 months of imprisonment."  Pet. Br. 19.

### i. *Martinez's Defenses*

The illegal alteration Martinez alleges is the date displayed at the bottom of the screen.  He argues he was in prison on the date displayed and therefore could not have appeared in the video.  However, the FBI agent testified at trial that the date displayed was when the 6 millimeter videotape was transferred to DVD format for presentation

at trial. Trial Tr. 107-08, ECF No. 38. It was not the date the video was recorded. There is no indication in the record that counsel believed there was an illegal alteration and based their defense on this unlikely ground.

In regard to his brother and co-defendant, Valentine, Martinez does not specify what testimony Valentine could have given that would have helped his defense. It is more likely that Valentine's testimony would not have been favorable to Martinez. It appears that Martinez came to that conclusion prior to trial, because he signed a written statement that he did not want Valentine to testify. *See* Coats Aff. ¶ 18, ECF No. 55; Suppl. Aff. Ex. 1, ECF No. 62-1. Martinez's allegation that his attorney thought he would defeat the government's case through Valentine's testimony is contradicted by the record.

### ii. Sentencing Exposure

Martinez alleges that both of his attorneys told him he was facing a sentence of 80 months. In Coats' affidavit, he states that he went to the Stone County Jail with an interpreter on June 16, 2008 to discuss the government's proposed plea agreement, and they went over the provisions in detail. Coats Aff. ¶ 4, ECF No. 55. They also discussed the discovery provided by the government. *Id.* If he was previously unaware of it, Martinez was informed at that time that he was facing up to 40 years in prison. *Id.*; Attach. to Suppl. Aff., Ex. 1 ¶ 4, ECF No. 63-1. Martinez signed a statement written on the back of the proposed plea agreement:

> 6-16-08
> I do not want to call my brother as a witness in my case.
> I <u>do not</u> want to plead guilty in my case. I want a trial on June 23, 2008.

Suppl. Aff. Ex. 1, ECF No. 62-1.

His signed statement shows he rejected the course of pleading guilty and made an affirmative decision to go to trial. These records are consistent with the Court's observations of Martinez during trial and sentencing. Throughout the proceedings, he professed his complete innocence of the drug dealing activities revealed by the government's investigation, and claimed to not know either of the two women who testified about their relationships with him. His sentence was based on the decision of the Court after conducting the trial and sentencing, and reviewing the Presentence Investigation Report. Martinez cannot show his attorneys provided him with ineffective assistance.

### c) Additional Evidence of Sentencing Factors

Martinez contends that during the sentencing hearing, counsel failed to bring certain facts to the Court's attention in mitigation of the sentence to be imposed. First, the issue regarding the threatening phone call from prison. As noted earlier, Martinez's argument - that he could not have made a call from prison - was brought to the Court's attention when Martinez testified at the sentencing hearing. Counsel committed no error in this regard.

Second, counsel should have challenged the claim that Martinez's former girlfriend had received 2 grams of methamphetamine from him over a hundred times. The Court rejected this testimony, and therefore counsel's failure to address it did not prejudice Martinez.

Third, it "defied credulity" that Martinez never stopped for fuel when driving

from Texas to Alabama. Regardless of whether the witness was correct in stating this fact, it did not factor into the Court's sentencing decision. Counsel's failure to challenge this statement did not prejudice Petitioner.

Fourth, Martinez faults his counsel for not arguing he had been deported and remained in Mexico during all of the alleged drug activities and purported travels to Texas and Alabama in 2006 and 2007. This is inconsistent with what Martinez told the U.S. Probation Office in August 2008. He reported to the Probation Officer that he was in Biloxi, Mississippi, until November 7, 2006, when he was arrested and deported. He reported being in Mexico until "sometime in 2007," after which he was in Biloxi again. This timeline is consistent with the trial testimony. Counsel did not err by failing to make this meritless argument at sentencing.

### d) Failure to Contemporaneously Object to Reasonableness of Sentence

Martinez contends his trial counsel was ineffective because he failed to object to the sentence imposed, resulting in a plain error standard of review rather than an abuse of discretion standard of review being employed by the appellate court. The Fifth Circuit requires the defendant to make an objection even where he does not have notice of the court's intent to impose a sentence above that recommended by the Guidelines. *United States v. Peltier*, 505 F.3d 389, 391-92 (5th Cir. 2007); *United States v. Gonzales*, 275 F. App'x 378, *1 (5th Cir. 2008). Under the plain error standard, the court "may correct the sentencing determination only if (1) there is error (and in light of *Booker*, an 'unreasonable' sentence equates to a finding of error); (2) it

is plain; and (3) it affects substantial rights." *Peltier*, 505 F.3d at 392.

The district court that sentenced the defendant in the *Peltier* case also resolved his Section 2255 motion, in which he argued that his attorney had provided ineffective assistance by failing to make an objection to the reasonableness of his sentence. That court's analysis is applicable to Martinez's claim:

> The Fifth Circuit explained that, had Peltier's counsel objected to the sentence, it would have reviewed the sentence for unreasonableness and applied an abuse of discretion standard of review to the reasonableness inquiry. Because there was no objection to the sentence, however, the Fifth Circuit applied the plain error standard, which has three parts. There must be error, the error must be plain, and the error must affect substantial rights. The Fifth Circuit explained that an unreasonable sentence equates to a finding of error. **Thus, the first step in the plain error standard is an evaluation of the reasonableness of the sentence**.

> The Fifth Circuit then explained that a sentence is unreasonable if it (1) does not account for a factor [that] should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors. The Fifth Circuit then worked its way through these factors, rejecting Peltier's claim that the district court gave insufficient weight to the applicable guidelines range and to the need to avoid unwarranted disparity in sentencing, rejecting his claim that the district court gave significant weight to the improper factor of his socioeconomic status, and rejecting his claim that the district court erred in balancing the appropriate factors. In light of this discussion, it is clear that the Fifth Circuit would have found that the sentence was reasonable and would have affirmed the sentence had the reasonableness standard of review been applied on appeal. Consequently, the failure of Peltier's attorney to object to the sentence when it was imposed did not prejudice the defendant. Absent a showing [of] prejudice, this claim lacks merit.

*United States v. Peltier*, Crim. No. 6:04cr60025, Civ. No. 6:09cv272, 2010 WL 5256359, *4 (W.D. La. Oct. 8, 2010) (adopted by *U.S. v. Peltier*, 2010 WL 5256356 (W.D. La. Dec. 15, 2010)(citations omitted, emphasis added).

Unlike the arguments presented by Peltier, Martinez simply argues that his sentence was unreasonable because the Court imposed a longer period of incarceration than that recommended by the Guidelines. Instead of identifying factors the Court should have considered, or that it weighed improperly, or specifying how the Court made a clear error of judgment, Martinez seems to claim his sentence was unreasonable simply because it was a variance from the Guidelines. However, "a sentence outside the Guidelines carries no presumption of unreasonableness." *Irizarry v. United States*, 553 U.S. 708, 714 (2008).

On appeal, the Fifth Circuit described Martinez's objection to the reasonableness of his sentence as an argument that his was "a typical heartland type of case" and his sentence was "extremely harsh compared to the actual crime that was committed." *United States v. Martinez*, 339 F. App'x 404, 405 (5th Cir. 2009). This argument did not require the Fifth Circuit to examine any of the reasonableness factors. Thus, even under an abuse of discretion standard of review, the Fifth Circuit would have found that the sentence was reasonable and would have affirmed the sentence. Under these circumstances, the Court finds no prejudice to Martinez resulting from counsel's failure to make an objection at sentencing.

### e) Failure to Argue the Inapplicability of Two-point Gun Enhancement

Petitioner argues counsel was ineffective for failing to argue his possession of a gun for a "sexual encounter" had nothing to do with his alleged drug activities. The Court finds this allegation without support in the record. There was an objection made

to that adjustment, which the Court discussed during the sentencing hearing. *See* Sent. Tr. 25-26, Oct. 27, 2008, ECF No. 40. The Court found "what is important is that a firearm was present and that it was present during a period of time which Mr. Martinez had gone to Houston for the purchase of narcotics. Consequently, it's the opinion of the Court that the adjustment is appropriate." *Id.* Petitioner can show no error by counsel in this regard.

### f) Failure to Communicate Plea Offers and Related Points of Law

There were two plea agreement deadlines established by the Court - March 24 and May 27, 2008. Petitioner argues his attorneys failed to inform him of the government's plea offers on those dates. Relief may be possible if counsel failed to disclose a plea bargain offer. *See United States v. Johnson,* 373 F. App'x. 480 (5th Cir. 2010); *United States v. Arguellas,* 78 F. App'x. 984, 986 (5th Cir. 2003). However, there is no indication in the record that the government ever made a plea offer during that time period. The only plea agreement offer was dated June 16, 2008, and that offer was discussed between Petitioner and his counsel. The result was Petitioner signing a statement that he did not want to plead guilty, but wanted to go to trial. Martinez can show no error by counsel.

Petitioner also faults his counsel for failing to inform him he could plead guilty without a plea agreement. Given the record in this case, it is highly unlikely that Martinez would have agreed to plead guilty under any circumstances. As the Court stated during sentencing:

I understand that defendants need to make some tough decisions and

> they need to make them as soon as they can, but that would certainly --
> the prospect or the proposition that Mr. Martinez would plead guilty
> would be totally inconsistent with the testimony he has given in trial
> under oath.  His testimony is he doesn't even know any of these women,
> much less had anything to do with drug dealing.

Sent. Tr. 29, Oct. 27, 2008, ECF No. 40.  He rejected the proffered plea agreement, which would have been significantly more favorable to him than a "straight-up" guilty plea.  His decision to go to trial was knowingly and intelligently made.  He has not established that he has suffered prejudice from the alleged failure of counsel to inform him he could plead guilty without a plea agreement.

Finally, Martinez complains that counsel never informed him "about the applicability of 'fast-track' disparities or 'safety valve' issues regarding his gun enhancement."  Pet. Br. 38.  Martinez does not describe the fast track disparities his counsel should have informed him of, but may be attempting to argue that there is a disparity between those districts that employ "fast track programs" which provide lesser sentences to defendants who agree to quick guilty pleas and other sentencing districts which have no such programs.

In considering this question, the Tenth Circuit Court of Appeals held that any disparity that results from fast-track programs is intended by Congress, and it is not "unwarranted" within the meaning of § 3553(a)(6).  *United States v. Martinez-Trujillo*, 468 F.3d 1266, 1268-69 (10th Cir. 2006).  Any sentencing disparity resulting from fast track disposition programs is not unwarranted as the disparity was also intended by Congress.  *See United States v. Gomez-Herrera*, 523 F.3d 554, 562-563 (5th Cir. 2008).  Counsel cannot be ineffective for failing to inform Martinez of a meritless claim.  *Sones*

*v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995).

Martinez also complains his counsel did not inform him about the "safety valve" provisions in the sentencing guidelines. The "safety valve" guideline, U.S.S.G. § 5C1.2, permits a court to impose a sentence below the statutory mandatory minimum sentence when the defendant does not have more than one criminal history point. Martinez falls into this category. However, there are four other criteria that must also be met. The defendant must not have used violence or possess a firearm in connection with the offense, the offense must not result in death or serious bodily injury, defendant must not have been an organizer or leader and was not engaged in a continuing criminal enterprise, and, before the sentencing hearing, the defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(1 - 5).

This provision plainly does not apply to Martinez, as he possessed a gun during the drug conspiracy. *United States v. Vasquez*, 161 F.3d 909, 912 (5th Cir. 1998). Furthermore, Martinez consistently disclaimed knowledge of any drug-related activities, even in his testimony at the sentencing hearing. There is no indication he has ever provided any information to the government regarding the drug conspiracy. Counsel was not ineffective for failing to advise Petitioner of this inapplicable sentencing guideline.

### g) Violation of Sixth Amendment Speedy Trial Rights

Petitioner contends that the period between his arraignment date of February 1, 2008, and the beginning of trial on July 7, 2008, was 58 days more than the Speedy Trial Act's 70 day deadline. He contends his Fifth and Sixth Amendment rights were violated by the government, which sought a delay in order to obtain Valentine Martinez's presence at trial, and his counsel was ineffective for failing to explicitly demand a speedy trial. This argument has both statutory/constitutional and ineffective assistance of counsel components.

Martinez argues that the Speedy Trial Act and the Fifth and Sixth Amendments were violated by the delay in his trial. These are the types of claims that could have been raised on direct appeal, and Martinez may not raise them for the first time on collateral review unless he shows cause for his procedural default and actual prejudice resulting from the error or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. The fact that his trial had been delayed was obviously known to Martinez at the time of his appeal, and he has advanced no reason why he was unable to bring his claims to the attention of the appellate court. They are therefore procedurally barred for Martinez's failure to show cause. *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996).

Nevertheless, in order to assess counsel's performance, the Court must examine the merits of the claims. Whether a defendant's Sixth Amendment right to a speedy trial has been violated is addressed in a four-factor analysis outlined by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530 (1972). In the Fifth Circuit, a full *Barker*

analysis is not warranted until there has been a one-year delay. *United States v. Molina–Solorio,* 577 F.3d 300, 304 (5th Cir. 2009). Martinez made his initial appearance in this case on February 1, 2008, and stood trial on July 7, 2008. Any argument for a Sixth Amendment speedy trial violation would have been futile, as the one-year delay required for making such a claim was well short of being reached. Accordingly, Martinez's claim that his attorneys were ineffective for failing to make such an argument is without merit.

Furthermore, the claim that counsel did not assert his speedy trial rights is factually incorrect. Valentine was Martinez's co-defendant. In moving for a continuance of trial, the government noted that a reasonable period of delay is permissible under 18 U.S.C. § 3161(h)(7) when a defendant is joined for trial with a co-defendant whose time has not run and no motion for severance had been granted. *Id*. Valentine was in federal custody in Alabama and scheduled to be sentenced there within the next month. *Id*. Weber objected to the request for continuance, stating that "Mr. Martinez insists on going to trial on May 7, 2008 as it is currently scheduled and does not waive his speedy trial rights." Def. Resp., Apr. 28, 2008, ECF No. 17. The Court granted the continuance, stating that "[i]n order to accommodate the efficient use of prosecutorial and judicial resources, the Court finds that the motion to continue to allow both co-defendants to appear at trial of this matter should be granted." Text Only Order dated Apr. 29, 2008. It was expected that Valentine would be transported to Mississippi after his sentencing in Alabama. Thereafter, the trial was scheduled for June 24, 2008.

After Weber withdrew, Coats was appointed and promptly filed a motion to continue the trial date in order to have adequate time to prepare. Mot. to Cont., June 19, 2008, ECF No. 21. The motion was granted and trial continued for two weeks, to July 7, 2008. Valentine was not transported from Alabama to Mississippi in time for trial, because there were also charges pending against him in Texas which took precedence over the Mississippi charges. *See* Trial Tr. 349. The U. S. Attorney later moved for, and obtained, dismissal of the Mississippi charges against Valentine. Order, Oct. 2, 2008, ECF No. 32.

The Court discerns no error by counsel in this sequence of events. Counsel objected to the government's request for a continuance, and none of the attorneys knew that Valentine would ultimately not be transferred to Mississippi for trial. Furthermore, the delay alleged by Martinez fails to take excluded time periods into account; the continuances granted alone result in 59 excludable days. *See* 18 U.S.C. § 3161(h)(7)(A).

EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case. The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. The matters reviewed by the Court conclusively show that movant is entitled to no relief.

CERTIFICATE OF APPEALABILITY

The Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing § 2255 Proceedings. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Butler v. Byrne*, 845 F.2d 501, 505 (5th Cir. 1988). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

If the petition was denied on procedural grounds, the petitioner must show that jurists of reason would find it debatable (1) whether the petition raises a valid claim of the denial of a constitutional right and (2) whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). The court must either issue a certificate of appealability indicating which issues satisfy the required showing, or must state the reasons why such a certificate should not issue. FED. R. APP. P. 22(b).

In this case the standards for issuance of a certificate of appealability are not met. Accordingly, the court is of the opinion that a certificate of appealability should not issue in this case.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [51] of the Defendant Lupe Martinez to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody pursuant to Title 28, United States Code, Section 2255, is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that a certificate of appealability is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 31st day of October, 2011.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE